# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **S.L. and A.L.**

**No. 19-0795** (Tyler County 19-JA-1 and 19-JA-2)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.L., by counsel Michael B. Baum, appeals the Circuit Court of Tyler County's July 30, 2019, order terminating his parental rights to S.L. and A.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), David C. White, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for an improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed a child abuse and neglect petition against petitioner and the mother alleging that they were unable to provide a safe and healthy environment for their children. Specifically, the DHHR alleged that law enforcement officers responded to the home in which petitioner and the mother were staying due to reports of domestic battery. Upon arriving at the home, officers observed the mother to have fingernail marks on her neck, a cut on her cheekbone, and a contusion on her forehead. The mother informed the officers that petitioner had caused the injuries when she attempted to leave with the child A.L. The mother reported that petitioner grabbed her by the throat and smacked her head on the concrete floor. Petitioner denied the mother's story. Ultimately, both parents were arrested, and the mother's purse was searched.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The search revealed methamphetamine, marijuana, and drug paraphernalia. The mother admitted to officers that petitioner purchased an "eight (8) ball of [m]ethamphetamine" and gave her one bag of the substance. Petitioner was charged with domestic battery and distribution of methamphetamine as a result of the investigation. Petitioner waived his preliminary hearing in the abuse and neglect proceedings.

The circuit court held an adjudicatory hearing on March 2, 2019. Petitioner failed to attend, and his counsel moved the circuit court to continue the hearing. The circuit court granted the motion and continued the hearing to April 2, 2019. Petitioner failed to appear at the rescheduled adjudicatory hearing, and the circuit court continued the hearing to April 16, 2019. On that date, petitioner once again failed to attend. The circuit court proceeded to hold the adjudicatory hearing in petitioner's absence, but petitioner was represented by counsel. Ultimately, the circuit court adjudicated petitioner as an abusing parent based upon his domestic battery against the mother in the presence of A.L.[2]

The DHHR filed a report in May of 2019, indicating that petitioner had failed to maintain contact with the DHHR since March 5, 2019. The DHHR noted that petitioner had twice attempted to contact his caseworker, but that the caseworker was unable to reach petitioner at the phone number he provided. The DHHR further noted that petitioner had not submitted to any drug screens or participated in any services offered. On June 4, 2019, the circuit court held a dispositional hearing, which was continued upon petitioner's motion to June 25, 2019. However, petitioner failed to attend the rescheduled hearing, and his counsel requested to withdraw from the case based on a breakdown in communication with petitioner. The circuit court granted counsel's motion to withdraw, appointed petitioner new counsel, and continued the hearing.

On July 10, 2019, the circuit court held the final dispositional hearing. Petitioner was present and represented by his recently-appointed counsel. The DHHR presented the testimony of a caseworker, who testified that petitioner failed to attend any multidisciplinary team ("MDT") meetings, submit to any drug screens, participate in any services, visit with the children, maintain contact with the DHHR, or attend several hearings. Petitioner testified that he attempted to contact his caseworker several times, but was never able to get in touch with her. He stated that he was willing to participate in any necessary services and noted that he attempted to find a drug screening location and a parenting class on his own, but had been unsuccessful without the help of his caseworker. Petitioner also blamed his failure to attend hearings on a lack of transportation and his counsel's failure to advise him of the hearing dates. However, petitioner conceded that he had not participated in the case and acknowledged that he had spent the two weeks immediately prior to the dispositional hearing back in jail for his failure to self-present to finish his sentence with regard to the domestic battery charge. A police officer also testified that petitioner failed to self-report to finish the sentence and that a capias was issued by the magistrate court.

At the close of evidence, petitioner requested an improvement period. The circuit court ultimately denied petitioner's request for an improvement period and terminated his parental

[2]Despite petitioner's absences, the circuit court ordered at each hearing that he would be permitted to exercise supervised visitation with the children if he could produce one negative drug screen.

rights. The circuit court noted that petitioner was informed at his preliminary hearing that "all he needed to do to visit with his children was pass a drug screen." However, nearly five months later, petitioner had not taken a single drug screen to facilitate visits with his children. Further, the circuit court found that petitioner made minimal attempts to contact the DHHR. The circuit court also found that petitioner failed to appreciate the wrongfulness of his actions. Based on these facts, the circuit court concluded that petitioner was not likely to fully participate in an improvement period and further found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the July 30, 2019, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying him an improvement period. According to petitioner, he was not given enough time to address the conditions of abuse and neglect. Petitioner avers that he was dealing with the loss of a home and transportation during the proceedings and argues that the DHHR erroneously requested the termination of his parental rights before he could correct the conditions of abuse and neglect. He further contends that it would have been in the children's best interests to grant him an improvement period. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is

---

[3]The mother successfully completed her improvement period, and legal custody of the children was returned to her. The permanency plan for the children is to remain in the care of the mother.

likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Having reviewed the record, we find that the circuit court did not abuse its discretion in denying petitioner's request for an improvement period. Petitioner failed to attend several hearings throughout the proceedings, despite the circuit court continuing both the adjudicatory hearing and dispositional hearing for petitioner's benefit. Petitioner also failed to attend MDT meetings, maintain contact with the DHHR, attempt to initiate any services with the DHHR, or try to set up visits with the children. While petitioner argues that he was dealing with transportation issues, the record indicates that petitioner only attempted to contact his caseworker two times during the proceedings and never mentioned issues with transportation in the voicemails he left. Additionally, petitioner was instructed at the beginning of the proceedings that he could participate in supervised visitation if he submitted a single negative drug screen. However, petitioner did not submit to any drug screens between his release from jail in early March of 2019 and his subsequent arrest two weeks prior to the dispositional hearing in July of 2019 and, therefore, did not visit his children during the entirety of the proceedings. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. at 90 n.14, 479 S.E.2d at 600 n.14 (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Given petitioner's complete lack of compliance during the proceedings, we find no error in the circuit court's decision to deny him an improvement period.

Petitioner also argues that the circuit court erred in terminating his parental rights without first employing a less-restrictive alternative. According to petitioner, the children were in a stable environment with their aunt and uncle while the mother continued in her improvement period. As such, petitioner contends that the children's permanency would not have been disrupted by granting him a disposition, such as one under West Virginia Code § 49-4-604(b)(5), which would have allowed him to "petition the [circuit c]ourt for custody of the minor children once the issues have been rectified."[4] Having reviewed the record, we find that petitioner is entitled to no relief in this regard.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c), "[n]o reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or

---

[4] West Virginia Code § 49-4-604(b)(5) provides, in part, that

> [u]pon a finding that the abusing parent [is] presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The evidence set forth above also establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse and/or neglect on his own or with help. Following his incarceration and subsequent release, petitioner refused to comply with any DHHR directives, including submitting to drug screens. Even though petitioner was informed he needed to submit only one negative sample in order to visit with the children, he never submitted to any screens. Further, petitioner failed to maintain contact with the DHHR or provide a reliable phone number at which he could be contacted. Petitioner failed to attend several hearings and MDT meetings, but never informed the DHHR of any transportation issues. Moreover, petitioner failed to comply with the terms of his plea agreement regarding his related criminal charges and was re-incarcerated for approximately fourteen days prior to the final dispositional hearing. Ultimately, testimony established that petitioner failed to demonstrate that he had adequately addressed the conditions of abuse and neglect.

To the extent that petitioner claims he should have been granted a less-restrictive alternative to the termination of his parental rights, this Court has previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Although petitioner claims granting him disposition pursuant to West Virginia Code § 49-4-604(b)(5) would not have disrupted the children's permanency, we note that the evidence establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse and/or neglect on his own or with help. Given that the circuit court properly found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future and the evidence is clear that the children's best interests necessitated termination, we find no error in the circuit court's decision to terminate petitioner's parental rights without employing a less-restrictive alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 30, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

5

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison